Let me just ask Judge Lassen, I think Judge Lassen would like to hear your argument, you do need a quick recess. Let's finish up. Agreed, okay. Our last case is Cuker Interactive and it's case number 21-55298. Looks like we'll be hearing from Ms. Strickland first. Good morning. Can you hear me? We sure can. Okay. May it please the Court, my name is Leah Strickland, Counsel for Appellant, Cuker Interactive, LLC. I would like to reserve five minutes for rebuttal. And this case concerns a conflict of laws question. And the question is, in the context of a regulated fiduciary relationship, what state's law governs the creation of the fiduciary's lien over the client's intangible property? In this case, the fiduciary is an attorney and the lien is an attorney charging lien on litigation. Here, California law applies for at least three reasons. First, under the second restatement test that Pillsbury contends applies, Section 251, California is the state with the most significant relationship to the parties, the chattel, and the security interest, because both of these parties hail from California, and it's the bad state's interests that are primarily implicated. Those interests include application of California's rules of ethics and avoiding constructive fraud. Second, under the second restatement test that Cuker contends should be applied, Section 188, California is also the state with the most significant relationship to the transaction and the parties. Can we go back to the restatement? Section 188 is also the section, go ahead. Can we go back to restatement 251? Sure. So how do you overcome, it seems to have a presumption that the greatest contact or the greatest weight goes to the contact where the chattel, and that's clearly Arkansas, right? Correct, correct. So here, in this case, both of the parties are in California, and the litigation was in Arkansas. No one disputes that. Now, Section 251, subsection 2 of Section 251 reads, in the absence of an effective choice of law by the parties, greater weight will usually be given to the location of the chattel. But you have to place this in the context of Section 251 overall, which is that the validity of a lien on chattel is determined by the law of the state that has the most significant relationship to the parties, the chattel, and the security interests under the principle stated in Section 6. So that's first. Second, you get to subsection 2, which creates what you describe and what I think is probably fairly described as a rebuttable presumption. So you acknowledge that your client then has to rebut the presumption, right? There's a couple of issues with this, and I think you have to go through an analysis in order to get there. So first of all, Section 251, to the extent that it creates a presumption under subsection 2, the presumption is obviously not rebuttable. The language states the greater weight will usually be given, not that the overwhelming weight will always be given. This presupposes that any presumption can be rebutted when conducting the most significant relationship analysis under subsection 6, and our contention is that has been done here. But you have to remember that before you get to the presumption, you have to read the entire rule. Subsection 2 begins with the condition that any such presumption only applies in the absence of an effective choice of law. Now the effective choice of law issue has to be considered in the context of this particular case. And recall that Section 251 applies to all liens, including commercial transactions and, for instance, governing the sale of goods. Its application will necessarily vary depending on the type of relationship between the parties. And here we have a fiduciary relationship that is regulated by the state. Don't vary the fiduciary in this relationship. And it did not advise SUCR about any such effective choice of law or any related issue. Our contention is that you don't even get to the presumption because SUCR failed to meet its burden as a fiduciary to disclose those issues. Hillsbury did not disclose any liens, despite being required to under California's ethical rules. It did not disclose the absence of an effective choice of law or that Arkansas law could supplant California on those issues. Well, as I read 251, it's in the absence of an effective choice of law by the parties. It seems to suggest that if the parties agree to a choice of law provision, then that governs. But there's definitely no agreement here. I agree. That is correct, Your Honor. There's no agreement. And there is no effective choice of law. So then what about the presumption? The presumption, probably in this case, the presumption applies because there is no effective choice of law. But you always have to remember that Hillsbury has not met its obligations as a fiduciary to disclose the issues that that clause raises, that there could be an effective choice of law that would benefit SUCR. The feeling that Arkansas law could apply here to Hillsbury's benefit. All of these things raise the issue of constructive fraud by a fiduciary. And this kind of rolls into the analysis of which state's law should apply under the Section 6 analysis. But you have to always remember that these sections apply together. That the effective choice of law issue, that the option of an effective choice of law, is a problem here that I don't think Hillsbury can overcome. Counsel, if I agree with you that the Section 6 factors counsel in favor of California, the problem is that presumption seems pretty strong. And I just don't know how we overcome that. At least can you give me a case where courts have overcome that presumption? The problem is that the most case law considers the fact that most case law is that the attorney is litigating in a home state. And in that specific factual scenario, I think that the presumption almost would never be overcome. And so the case law that we see... What about in the non-attorney lien circumstance? I don't know that that type of case law would apply. One, I don't know that, I don't know. When you look at the case law analysis, and I'm not sure which cases, I'm having trouble recalling which cases governed non-attorney lien. As I read the brief, I don't think there was any case showing preventing that presumption in 251. So that's just the problem I have with the case, even though I do think the Section 6 factors strongly counsel in favor of California. I think there's a problem here. So when you look at an attorney-client relationship, the non-attorney-client cases do not take into account the attorney-client relationship and the fiduciary obligations that the attorney owes its client. So you have the failure to disclose here that the attorney engaged in, and it's trying to take advantage of that failure to disclose now. The California factors, if you look at Section 6, you have to look at the relevant policies of the forum and the other interested states and the relevant interests of those states in determination of the particular issue. The comments to Section 6 instruct us that, in general, it is fitting that the state whose interests are most deeply effective should have its local law applied. Generally speaking, Section 251 tells you usually, not always, but usually that's going to be the state with a challenge. But this is one of the rare cases when that presumption is overcome. It is not an irrebuttable presumption. And if we go into this assuming that because we haven't seen a case before that hasn't rebutted it, therefore no case ever can, we've created an irrebuttable presumption that completely contradicts the text. I don't think anyone is suggesting the presumption is irrebuttable. I think the problem is that to the extent both sides have fair arguments on who has the greater interest, the Section 251 comes in and says, here's the thumb on the scale. It's for where the chattel attached. And there's reasons for that. It increases predictability. Here I think it's more than fair to conclude that your client knew that it was getting into the world of Arkansas because it was involved in litigation there. In fact, it sued Pillsbury there affirmatively. And so I just don't see, even on the equities, how this would favor your client over Pillsbury. With all due respect, Your Honor, I don't think that that's where the analysis lays under Section 6 because Section 6 puts the weight on the state whose interests are stronger. And here that's California. It is true that Arkansas has some interest because it is the state where the litigation occurred. But this is not a governmental interest analysis where any interest qualifies. It's simply a which one has greater weight, yes or no, and if the greater weight is in favor of California, then California law should fairly apply. Again, this is an attorney-client relationship and ethical rule that Pillsbury certainly knew applied. It's not fair to assume that a California client would assume that another state would come in to have its laws apply to govern its relationship with its California attorney, at least as it goes to ethical relationships. In fact, one of the cases relied on by Pillsbury, which both parties briefed in Ray Mitricom, that case specifically tells us that the client would be particularly likely to expect its local law to govern where the client has its sole place of business in that state. It also teaches us that where the location of the attorney is not merely fortuitous, that is also a strong indication of where whose state's law should govern. Here, both the attorney and the client were located in the same state. That state, California, provides that attorney liens can only be created by contract. And it has a rule of professional conduct specifically requiring disclosure of such a lien. And we have California policy that also states that the attorney would be required to disclose facts that would advantage it to its client's detriment. And each of those factors shows that California has a greater interest in its law applying under the factors of Section 6. It is the state whose interest would be more significantly impacted by not having its law applied. Even if Arkansas law applies to the statutory lien, are those not defenses that you could have made, whether here or in the malpractice action? We're litigating that issue here. I don't think that it's not an issue that would be litigated in the malpractice action. What's happened with the malpractice action? It is still in the middle of an arbitration. The parties are in the middle of briefing, I think post-trial briefing, and it's set to be heard for oral argument in May. Okay. Let's leave you some time for rebuttal, and we'll hear from your opposing counsel. Thank you. Good afternoon. I'm sorry. Good morning where you are, Your Honors. Andrew Tripp, representing the FOA in Tolstoy, and in full disclosure, I am both a partner in Tolstoy, and I have been admitted pro hoc to represent Tolstoy in this matter. Your Honors, I thought about trying to create an overarching theme here, but I think some of the discussion here has touched on these very issues. So rather than repeat them, let me sort of dive right in. Counsel for Super points you to American Metrocom, which is, I believe, a Delaware bankruptcy court case. And I think if you look at that case, it's very clear that Super's reliance on it here is misplaced. The court there held specifically the fact that Duane Morris has an office in Illinois and that parties happen to negotiate next to keep the engagement letter secure. Duane Morris's services at that office is insignificant. It's insignificant. The court goes on to hold that the admission of a lawyer's pro hoc visa to conduct litigation in California and Louisiana should have led to an expectation that those states would apply to their fees. Here, Your Honor, there is no question. Pillsbury was engaged to represent Super in ongoing litigation in Arkansas. Pillsbury was retained to, and as a result, Pillsbury pro hoc'ed into Arkansas. And just like I am here today as a member of your bar, Pillsbury appeared before District Court Judge Brooks in the Western District of Arkansas, and an Arkansas lawyer before his bar. Those were the rules. They were understood. The record's clear that Super understood that. He had a fee application, I'm sorry, a fee agreement with a local Arkansas lawyer that specifically referred to the rule of statute. He was under, the company, I'm sorry to say, Your Honor, the company, was under no illusion. Counsel, under California law, there seems to, sorry, under California law, in order to create an attorney's lien, they require a certain notice provision. Why is that, of course, was that not presented in the engagement letter with Cooper? Your Honor, that's a good question and one that I don't have an answer to. It was read before my time at Pillsbury. But what I do understand is that this is a situation that until this case, I can't find anyone at the firm that's ever encountered it. No one has had an issue where Pillsbury was represented, was engaged to represent a client in litigation outside of California, that a question about having to comply with California's law, ethical requirements on obtaining a lien, were ever raised. And, Your Honor, perhaps not exactly in response to your question, but I do think it can be cited as a fact here that the judgment that we're talking about in Arkansas for $3.4 million, 2.7 of it was for legal fees, and the balance was for damages. And in that regard, I think that you have to look at this case consistent with the general policy that Judge Brooks created the funds. And the idea that his court wouldn't have jurisdiction over it, his law wouldn't have jurisdiction over it, is inconsistent both with the expectation of the parties and the purpose of the lien statute in Arkansas. And, Your Honor, I'd also note that the issue for the ethical requirements, as I understand them, in California is that lawyers are not supposed to overreach. They are not supposed to take advantage of their fiduciary relationship to entice their client, to give them an interest in their property without disclosure. And the reasons you have to do it that way is because California doesn't have a non-consensual lien. In Arkansas, there is. I mean, I guess that's the problem. From my perspective, if I was a client in California engaging another California attorney, I would just presume that California rules would apply, and it seems like it probably would have been better to inform the client that Arkansas laws might apply. Your Honor, I can't state that there will not be lessons learned from this case. Right? I can't say that. But whether the lessons learned from this case, and having to litigate this matter over years at this point in time, and modifying behavior going forward, is not the standard to determine whether or not it is required in this case. And in this case, Your Honor, I think every place you look at this statement says it should be Arkansas law. If you look at Section 248, which deals with conveyances of chattel or documents in chattel, it says that the effect of the conveyance of an interest in chattel is determined by the law and will be applied by the court to the state where the chattel was at the time of the conveyance. So the time of the conveyance here is a matter of law in Arkansas. It happens automatically. That's where it took place. And throughout, it's clear that documents are chattel. Right? Section 255 is to the same effect as it relates to creating a security interest. Right? It's very clear that the restatement understood, the draft is understood, that the rule is focused on the location of the chattel, location of the judgment, the district court would have then issued it. Your Honor, the other reason why I think that this is particularly common from a commercial perspective, and the district court acknowledges this in her decision, she wrote that the basic policies underlying the perfection of means, predictability, and uniformity, this is applied in Section 6 standards, and ease of the discrimination of applicable law, all support applying Arkansas law to a minimum of judgment issued by an Arkansas court for unpaid attorney's fees incurred in Arkansas litigation. And why is it that basic policies of perfection and means and predictability and uniformity, the judgment, right, the right to take advantage of the judgment, is a piece of personal property which super could alienate. It could try to sell it. It could try to secure it, use it as security for love or death. And the owner party of that commercial transaction has to know where to go in order to determine whether there are conflicting interests in the lien. There's no, let's just say for litigation in Arkansas, they look to the statute, and they say, and that commercial party would say, well, lawyers, they all have an interest in this aspect. That aspect, that affects my commercial, non-lawyer, non-legal aspect. And I think that's also an important reason why this rule is the right rule. To perfect an interest in that means or in that judgment, a lender would have to go to Arkansas. And all they have to do is file something in an Arkansas court to establish its position. Super argues at various points that, well, that overstates their relationship because Walmart has assets in 50 states. And so the issue of collection or where the money is going to come from could have been in any one of the 50 states. I think that proves too much, Your Honors, and, in fact, it demonstrates why having a single location that covers the voids, if anything, flowed from this judgment or to this judgment, is the right one to apply here. And, again, Your Honor, I just note the reality that this judgment, nearly 78 percent of it, I think if I get my math right, I should be inferring it could be 72 percent. But in either case, it's a huge percentage. It's for legal fees. Legal fees, the judge brought the order to lawyers who, he said, tried one of the best cases he'd ever seen. And it just seemed incongruous that his law would not be the law that determines the interest in that judgment. Any further questions from me, Your Honors? It doesn't seem so, so we'll thank you for your argument, and we'll hear rebuttal. Thank you, Your Honors. Thank you, Your Honor. My first point would be to address an issue in METRICOM raised by my colleague, Mr. Troop. He said that the location of the attorney was insignificant. That is incorrect. The court said that it was merely fortuitous because the client was not located there and the attorney was located in multiple jurisdictions. Here, the location is not merely fortuitous. It's been established that the location of Super in California was of primary importance, or rather, Pillsbury in California was of primary importance in why it selected Pillsbury as its counsel. Now, this entire dispute could have been easily resolved by Pillsbury simply complying with California law. This is not some kind of insurmountable obstacle. Applying the law of the state where the attorney and the client is located, that would be the most consistent result as between the attorney and the client. They would always know what law would apply to the creation of an attorney lien. If the attorney wants some other state law to apply, it can disclose it to that client. What they cannot do is stay silent on the issue and then years later take advantage of its own silence to its client's detriment in contravention of these applicable ethics rules that apply to it. Thank you very much. Thank you very much. I'd like to thank both of you for your fine arguments this morning. I'd like to thank Judge Lasnik for being with us. I'd like to thank Judge Bumate for a fine sitting week and thank all of our staff here at the courthouse in Pasadena. Thank you, Deanna, for your assistance as corporate deputy, and thank you to Kwame for his technical assistance. We wish all of you a pleasant afternoon. This case is submitted, and that concludes our meeting. Thank you. Thank you, Your Honor. And if I may, for everyone who participated in the prep sessions with your staff, you don't get to demo those, but then I will share with you, I think universally, they are top-notch, very professional. Well, we appreciate that feedback, and we appreciate that feedback. Thank you for letting us know. We are blessed to have a very fine staff in all realms here at the court, and we're glad that they're providing you with that service. Thank you very much, Your Honor. Have a good evening, everyone.
judges: BRESS, BUMATAY, Lasnik